UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOSEPH RAYMOND GRECO, III          CIVIL ACTION

VERSUS          NO: 13-3514

VELVET CACTUS, LLC AND SCOTT          SECTION: R
DICKINSON

## ORDER AND REASONS

Plaintiff Joseph Greco moves to strike a number of exhibits attached to the motions for summary judgment of defendants Velvet Cactus, LLC and Scott Dickinson.[1] Greco also moves to strike certain statements in defendants' statements of uncontested material facts. For the reasons that follow, the Court DENIES plaintiff's motion.

## I.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(f) allows the court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A motion to strike under Rule 12(f) "is a drastic remedy to be resorted to only when required for the purposes of justice." *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962); *see also Kaiser Aluminum & Chem. Sales, Inc. V. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982)("[M]otions to strike a

---

[1] R. Doc. 40-1.

defense are generally disfavored, . . .”); *Synergy Mgmt., LLC v. Lego Juris A/S,* No. 07-5892, 2008 WL 4758634, at *1 (E.D. La. Oct. 24, 2008) (“Motions to strike made under Rule 12(f) are viewed with disfavor by the federal courts, and are infrequently granted.”). A motion to strike should be granted only when “the allegations are prejudicial to the defendant or immaterial to the lawsuit.” *Johnson v. Harvey,* No. 96-3438, 1998 WL 596745, at *7 (E.D. La. Sept. 8, 1998) (citation omitted). Immateriality is established by showing that the challenged allegations “can have no possible bearing upon the subject matter of the litigation.” *Bayou Fleet P'ship v. St. Charles Parish,* No. 10-1557, 2011 WL 2680686, at *5 (E.D. La. Jul. 8, 2011) (citations omitted). Disputed questions of fact cannot be decided on a motion to strike. *Gonzales v. State Farm Mut. Auto. Ins.,* No. 10-3041, 2011 WL 2607096, at *5 (E.D. La. July 1, 2011).

## II. EXHIBITS

### A. Exhibits 3 and 13

Exhibits 3 and 13 are depositions that were submitted in compressed format. Plaintiff moves to strike them from the record for failure to comply with the Court's October 10, 2013 scheduling order, which required that all deposition transcripts be submitted in uncompressed format. Plaintiff's request is now

2

moot, as the Court permitted defendants to supplement the record with uncompressed copies of both transcripts.[2]

**B.   Exhibit 4**

Exhibit 4 consists of a series of emails forwarded from a Sprint phone number to defendants' attorney, Kate Brownlee.[3] In defendants' supplemental Exhibit 5, Dickinson declares under penalty of perjury that each email contains a text message sent either by Greco to Dickinson or vice versa.[4] The emails do not identify the author of each message or indicate the date on which each message was sent.

Dickinson declares that his phone does not permit him to print or take a "screen shot" of the text messages. He further declares based on his personal knowledge that the text messages contained in Exhibit 4 were sent between May 11, 2012 and March 13, 2013. During that period, Dickinson declares that Greco and Dickinson sent each other at least 111 messages. In Dickinson's declaration, he specifically identifies Greco as the author of 11 of the messages and provides the date on which each of the 11 text messages was sent.[5] He bases these declarations on his personal knowledge "based on [his] review of the text messages

---

[2] R. Doc. 38-2; R. Doc. 43.

[3] R. Doc. 28-5.

[4] R. Doc. 38-2 at 16-17.

[5] *Id.* at 17-19.

3

contained on [his] cell phone."[6] Greco personally admitted to the accuracy of 5 of the 11 text messages in the portion of his deposition that was submitted by defendants.[7] Moreover, Greco's attorney questioned Dickinson about a number of Dickinson's messages to Greco that were included in Exhibit 4,[8] and Greco now relies on Dickinson's acknowledgment that he sent those messages in the opposition to summary judgment.[9]

Greco first argues that the entire set of messages is irrelevant. Rule 401 provides that evidence is relevant as long as it has probative value with respect to any fact of consequence to the determination of the action. Fed. R. Evid. 401. Defendants argue that the messages speak to the issue of whether the allegedly harassing conduct was "unwelcome," as well as whether it was "severe or pervasive." Both of these issues are elements of Greco's claim of hostile work environment sexual harassment.

Each message whose author has not been identified in either Dickinson's declaration, Dickinson's deposition, or Greco's deposition lacks relevance for the purposes of defendants' motions for summary judgment and will not be considered by the Court in deciding defendants' motions for summary judgment.

---

[6] *Id.*

[7] R. Doc. 28-2 at 26-31.

[8] R. Doc. 44-2 at 51-60.

[9] *See, e.g.*, R. Doc. 44 at 9-10.

Without knowing the identity of the author, those messages are probative neither of Dickinson's conduct nor of Greco's subjective response to Dickinson's alleged harassment.

Nonetheless, the messages are not the proper subject of a motion to strike unless they "can have no possible bearing upon the subject matter of the litigation." To the extent the messages are otherwise admissible, defendants could establish their relevance at trial by introducing testimony or other evidence of the identity of their author.

Greco also argues that there is a lack of foundation for the messages, but defendants' supplemental Exhibit 5, which is Dickinson's sworn declaration, identifies the contents of the emails and explains why they are presented in the format in which they appear.

Greco further claims that the text messages are not authenticated. But Rule 901(b)(1) provides that the testimony of a witness with knowledge "that an item is what it is claimed to be" satisfies the authentication requirement. Fed. R. Evid. 901(b)(1). Dickinson personally forwarded each text message from his phone to Brownlee's email address. Accordingly, he has personal knowledge of the authenticity of contents of the emails, and his testimony identifying them as a series of text messages between him and Greco suffices to authenticate them as such.

Greco also argues that the emails violate the Best Evidence Rule, which provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Contrary to defendants' assertion, the Best Evidence Rule does in fact apply to the text messages, because Dickinson's personal knowledge of them is derived entirely from having viewed them in his phone. *Cf. United States v. Harry*, 927 F. Supp. 2d 1185, 1227 (D. N.M. 2013) (applying best evidence rule to text messages); 2 McCormick On Evid. § 233 (7th ed.) (citing *State v. Espiritu*, 176 P.3d 885, 893 (Haw. 2008) (noting that the "best evidence rule is "particularly suited" to electronic evidence and admitting testimony about text messages under the best evidence rule when original messages and cell phone were unavailable and there was no evidence of proponent's bad faith)).

The purpose of the best evidence rule is to prevent inaccuracy and fraud when attempting to prove the contents of a writing. *See United States v. Yamin*, 868 F.2d 130, 134 (5th Cir. 1989) (holding that, in a prosecution for the sale of counterfeit watches, it was not error to allow testimony regarding the trademark on the watches rather than introducing the watches themselves, in part because the purpose of the rule was not violated) (citing Fed. R. Evid. 1001, advisory committee note). That purpose is satisfied here. Dickinson states under penalty of

perjury that each email accurately reflects the contents of a single text message. Moreover, plaintiff not only admits to the accuracy of several of the messages in his deposition; he also utilizes *the very same exhibit* as the basis for his deposition of Dickinson concerning a number of the text messages. Indeed, Exhibit 4 is the only possible source of the messages about which Greco's attorney deposed Dickinson, because Greco replaced his own phone shortly after filing his EEOC charge and claims to no longer have a record of the messages.[10] Greco, just like defendants, relies heavily on deposition testimony concerning the text messages in his opposition memorandum. Plaintiff cannot seriously dispute the accuracy of the very exhibit on which he relies, and in fact, he does not. Nowhere in his motion to strike does Greco actually dispute the accuracy of the messages in the exhibit.

Moreover, given the purposes of the Best Evidence Rule, it is reasonable to conclude that the emails meet the definition of an original. "For electronically stored information, "original" means any printout — or other output readable by sight — if it accurately reflects the information." Fed. R. Evid. 1001. According to Dickinson's affidavit, the text messages essentially were converted to email format for printing. As discussed above, Greco cannot and does not dispute that the emails accurately

---

[10] R. Doc. 28-2 at 33.

reflect the limited information they purport to display–not the author or date of the messages, but their contents. Nor does Greco indicate whether he believes the author and time stamp would even be displayed on the same screen as the content of each message. Accordingly, the Court concludes that it is appropriate for both parties to rely on the emails as evidence of the content of the messages themselves while relying on sworn statements and deposition testimony for information regarding the author and date of those messages.

Greco also argues that the messages are hearsay. To the extent defendants seek to introduce messages authored by Greco against him, they are the admissions of a party opponent and are not hearsay. Fed. R. Evid. 801(d)(2). Messages sent by Dickinson are Dickinson's own, out-of-court statements and would constitute inadmissible hearsay if introduced by Dickinson at trial unless they were not offered for the truth of the matter asserted or met some exception to the hearsay rule. There was only one such instance in the entirety of defendants' motions, however, and the message was not offered for the truth but to demonstrate its effect on Greco.[11] It is plaintiff–not defendant–who relies on messages sent by Dickinson in support of his arguments.

---

[11]   R. Doc. 28-1 at 10 (Greco to Dickinson: "U left yet?"; Dickinson to Greco: "Not going buddy."; Greco to Dickinson: "Alrite bud. Next time.")

Accordingly, the Court denies plaintiff's request to strike Exhibit 4.

### C.   Exhibit 5

Plaintiff moves to strike the original Exhibit 5 because it is an affidavit that was not notarized. This objection is moot in light of the Court's order permitting defendants to file a supplemental Exhibit 5, which is an unsworn declaration under penalty of perjury pursuant to 28 U.S.C. § 1746.

### D.   Exhibit 8

Plaintiff moves to strike Exhibit 8 as inadmissible hearsay. The exhibit consists of several disciplinary writeups against Greco that were completed by Aimee Sandrock, the General manager of the Velvet Cactus.[12] Based on Sandrock's affidavit,[13] it appears that the records would satisfy the requirements of the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). The Court denies this motion.

### E.   Exhibit 9

Exhibit 9 is the Velvet Cactus Restaurant's employee handbook. Plaintiff raises a litany of meritless objections to its introduction into evidence: namely, that it "lacks foundation, lacks authenticity, relevancy and its probative value is substantially outweighed by its confusion of the issues, and

---

[12] R. Doc. 28-9.

[13] R. Doc. 28-11.

9

violates the Best Evidence Rule." Herb Dyer, one of the owners of the Velvet Cactus, identified and authenticated the handbook in his affidavit and establishes that it complies with the business records exception to the hearsay rule.[14] The relevance of the handbook is beyond dispute, as it is clearly probative of the existence of a sexual harassment policy at the Velvet Cactus.

Plaintiff disingenuously attempts to mislead the Court into believing the handbook "was clearly published after the relevant time period" because it contained a time stamp of May 29, 2013. Herb Dyer indicated in his deposition that May 29 was the date on which the document was last opened, not the date on which the handbook was created. Plaintiff puts forth no evidence whatsoever that refutes this assertion. In any event, doubts as to the date on which the handbook was created go to the weight—not the admissibility—of the evidence. Plaintiff is free to convince the jury at trial that the handbook was created after he filed this lawsuit.

Again, defendants are mistaken in their assertion that the Best Evidence Rule does not apply. Herb Dyer's testimony regarding the contents of the handbook is based not on independent knowledge but on having previously read the handbook.[15] Nonetheless, Exhibit 9 complies with the Best

---

[14] R. Doc. 28-16 at 2.

[15] R. Doc. 45-2.

10

Evidence Rule. Rule 1001 defines an "original" of electronically stored information to include "any printout—or other output readable by sight—if it accurately reflects the information." Fed. R. Evid. 1001. The "information" defendants seek to introduce are the contents and existence of Velvet Cactus's sexual harassment policy, not the date of the handbook's publication, which arguably is not contained in the document.

If plaintiff truly believes that the handbook was first published on May 29, 2013, then the proffered exhibit would most certainly qualify as an original. And if the date listed at the bottom of each page of the electronically stored handbook changes each time the document is opened, it would be impossible for defendants to produce an exhibit that contained the same "opened on" date as the day it was first produced.[16] *Cf.* Fed. R. Evid. 1004 (stating that an original is not required if it "cannot be obtained by any available judicial process"). Plaintiff has not introduced any evidence suggesting that Dyer was lying when he testified that this date changes every time the document is opened. Accordingly, the Best Evidence Rule does not render the handbook inadmissible.

---

[16] Dyer testified in his deposition that defendants did not possess a PDF version of the document. R. Doc. 45-2.

**F.   Exhibit 12**

Exhibit 12 is a picture of the office door at the Velvet Cactus, on which the company's sexual harassment policy purportedly appears. Plaintiff argues in a conclusory fashion that the photograph "is irrelevant, its probative value is substantially outweighed by unfair prejudice and confusion, it lacks foundation and it lacks authenticity." His primary objection appears to be that the photo was taken in 2014.

Herb Dyer identified and authenticated the photograph in his affidavit as accurately reflecting the appearance of the office door since 2010.[17] The photograph is clearly relevant and probative both of the existence of the Velvet Cactus's sexual harassment policy and of Greco's alleged awareness of it. Again, a document such as a photograph can be authenticated by testimony of a person with personal knowledge indicating that it is what it is claimed to be.

Plaintiff argues that the photo is prejudicial and confusing "to the extent it purports to reflect the state of the office at a time other than the time the picture was taken." But the photograph purports to reflect the appearance of its contents at the time it was taken; only Dyer's statements in his affidavit suggest that the photograph also serves as an accurate illustration of the door's appearance since 2010. That plaintiff

---

[17] R. Doc. 28-16 at 2.

disputes this fact is not a proper basis for striking the photograph.

Finally, the Best Evidence Rule does not apply. Dyer states in his affidavit that he has personal knowledge of the appearance of the door; the photograph is merely an illustration. The Advisory Committee's Note on Rule 1002 speaks directly to this point:

> The usual course is for a witness on the stand to identify the photograph or motion picture as a correct representation of events which he saw or of a scene with which he is familiar. In fact he adopts the picture as his testimony, or, in common parlance, uses the picture to illustrate his testimony. Under these circumstances, no effort is made to prove the contents of the picture, and the rule is inapplicable.

Accordingly, plaintiff's Best Evidence argument is without merit, and his motion to strike Exhibit 12 is denied.

### G.   Exhibit 14

Exhibit 14 is the affidavit of Velvet Cactus employee Freddie Martinez. Plaintiff moves to strike the affidavit in its entirety because he believes it contains a single statement that is based on speculation rather than personal knowledge. Martinez asserts that "[s]ince Mr. Dickinson's return from his suspension in February 2013, there has been no further inappropriate behavior."[18] The most obvious interpretation of this statement is that Martinez has not personally witnessed any further

---

[18] R. Doc. 28-15.

inappropriate behavior, and the Court construes it as such. Accordingly, plaintiff's contention that the statement is based on speculation is without merit.

**H.  Exhibit 15**

Exhibit 15 is Herb Dyer's affidavit. Again, plaintiff moves to strike the entire affidavit based on certain statements he believes are speculative and not based on personal knowledge. Plaintiff inexplicably concludes that Dyer could not have personal knowledge of whether the restaurant's sexual harassment policy was posted on the office door because he did not have an active managerial role there. It is undisputed that Dyer is an owner of the Velvet Cactus and that he visited the restaurant. Moreover, that plaintiff disagrees with Dyer is not a proper basis for a motion to strike.

Plaintiff also objects to Dyer's statement that "White spoke to four others who did not agree to have Dickinson reinstated." White may have *told* Dyer that he spoke to four others, but that does not mean that Dyer has personal knowledge as to whether White actually did so. This statement is admissible for the limited purpose of demonstrating that Dyer *believed* White spoke to the others, a fact that is relevant to the sufficiency of Dyer's response to the alleged harassment.

Regardless of the admissibility of this particular statement, there is no need to strike Dyer's entire affidavit.

14

*See White v. Wells Fargo Guard Servs.,* 908 F. Supp. 1570, 1584
(M.D. Ala. 1995)("The court notes that even if an affidavit does
contain some inadmissible material, the court is not required to
strike the entire affidavit. The court may strike or disregard
the inadmissible portions and consider the rest of the
affidavit.") (citations omitted).

### I.   Exhibit 16

Exhibit 16 is a copy of the Facebook message Dyer posted on
the Velvet Cactus Employee Facebook Page. Plaintiff objects
without argument that it is not properly authenticated. Dyer
authenticated the exhibit in his affidavit.[19]

### J.   Exhibit 20

Exhibit 20 is a copy of a Facebook message sent by Freddie
Martinez to Dyer on February 10, 2014 in which Martinez indicates
that he witnessed no further inappropriate conduct from Dickinson
after his suspension.[20] Plaintiff contends that the exhibit is
irrelevant, that it is inadmissible hearsay, and that its
probative value is outweighed by its prejudicial effect and
danger of confusion.

The message is properly authenticated in Martinez's
affidavit.[21] Defendants argue that the message is not hearsay

---

[19] R. Doc. 28-16 at 1.

[20] R. Doc. 28-21.

[21] R. Doc. 28-15.

15

because it is a statement made by the declarant and because it is a present sense impression, citing Fed. R. Evid. 803(1). The hearsay rule applies to all out-of-court statements, even those made by the testifying witness. Fed. R. Evid. 801. And the present sense impression exception to the hearsay rule applies only to statements that describe or explain an event or condition as or immediately after the declarant perceives it. Fed. R. Evid. 803(1). The Facebook message speaks to Martinez's perception of Dickinson's conduct over the court of an entire year and is not a present sense impression. Accordingly, the Facebook message is inadmissible to the extent it is being introduced for the truth of the matter asserted. It is, however, admissible as non-hearsay evidence for the limited purpose of demonstrating its effect on Dyer. More specifically, Martinez's assurances that there had been no other problems with Dickinson explain in part why Dyer did not feel the need to take further action against Dickinson.

Finally, the message is in no way prejudicial to Greco, as Greco himself admits that the allegedly harassing behavior stopped after Dickinson's suspension. Moreover, Martinez's own affidavit contains precisely the same information, based on Martinez's personal knowledge.[22]

---

[22] *Id.* at 1 (stating that "[s]ince Mr. Dickinson's return from his suspension in February 2013, there has been no further inappropriate behavior," and that the Facebook message "reflects my opinion that Mr. Dickinson's inappropriate conduct has stopped.").

**K.    Exhibit 21.**

Exhibit 21 is plaintiff's termination notice.[23] Plaintiff asserts without argument that it is hearsay. Aimee Sandrock, the General Manager and the author of the notice, authenticates the document in her affidavit as being made at the time of plaintiff's termination. As such, the notice would fall under the business records exception to the hearsay rule. Fed. R. Evid. 803(6).

**L.    Exhibit 24**

Exhibit 24 is a copy of plaintiff's complaint. Greco moves to strike it as cumulative, as the complaint is already in the record. Defendants merely provided a copy of the complaint for the court's ease of reference. Greco's argument in favor of striking the complaint is frivolous and a waste of the Court's time.

**M.    Exhibit 25**

Exhibit 25 was a copy of plaintiff's W-2. Plaintiff moved to strike it from the record because it contained personal information and because he believed it was irrelevant. The Court previously granted Greco's motion to strike the exhibit and permitted defendants to replace it with a redacted copy of the document.[24] Therefore, the motion is moot except on the grounds

---

[23] R. Doc. 28-22.

[24] R. Doc. 38-2 at 37-38.

of relevance. The W-2 is probative of whether Dickinson was Greco's employer, an essential element of the Title VII claim that Greco asserted against Dickinson. Accordingly, the motion is denied as to new Exhibit 25.

## III. DEFENDANTS' STATEMENTS OF UNCONTESTED MATERIAL FACTS

Greco moves to strike numerous statements from Velvet Cactus's Statement of Uncontested Material Facts. Greco's objections are primarily minor disputes as to the proper way to characterize the facts and as such are not a proper basis for a motion to strike. Greco also repeatedly seeks to strike statements that are supported by his deposition answers to leading questions, despite the fact that Rule 611(c), the very rule he cites, plainly permits the use of leading questions when examining an adverse party.

Greco objects to Statement of Material Fact 13, which states:

Subsequent to Dyer's Facebook post, Martinez and one anonymous employee submitted letters to Dyer asserting their dissatisfaction with Dickinson's behavior as the General Manager.[25]

Greco argues that this statement is inadmissible, because it relies on Exhibit 26,[26]

---

[25] R. Doc. 28-29 at 2.

[26] Greco mistakenly identifies the letter at issue as Exhibit 16.

which contains a typewritten letter that does not contain
any markings to identify the date or author. As such, there
is no admissible evidence supporting the contention that the
letter was submitted to Mr. Dyer after a particular date.[27]

Defendants do not offer the letter for the truth of the
matters asserted therein. They simply offer it to explain the
effect it had on Dyer; that is, why he suspended Dickinson. That
it has no listed date or author is irrelevant. Dyer stated under
oath that he received it in response to his Facebook post,
thereby laying the foundation as to its origin. That plaintiff
inexplicably disputes its authenticity for the purposes of this
motion (while relying on its contents for the truth in his
opposition motion) is no basis for striking the exhibit.

Greco objects to Statement 12 because it relies on Exhibit
16, but the Court has determined that Exhibit 16 is not
inadmissible on the ground articulated by the plaintiff.

Greco objects to Statement 14 on the ground that it is
unsupported by the record evidence cited by defendant. Defendant
inadvertently cited Exhibit 3 instead of Exhibit 13, but the
latter properly supports the statement.

Greco objects to Statements 19-21 because they are supported
by Exhibit 15, but the portions of that exhibit on which the
statements rely are admissible, as discussed above.

---

[27] R. Doc. 40-1 at 7.

**III. CONCLUSION**

For the foregoing reasons, plaintiff's motion to strike is DENIED.

New Orleans, Louisiana, this ___27th___ day of June, 2014.

_____
                SARAH S. VANCE
     UNITED STATES DISTRICT JUDGE